**Case No. 13-** 1425

## PUBLIC DOCUMENT

**Before the
Court of Appeals for the Federal Circuit
Washington DC**

_____

| | |
|---|---|
| MUKAND, LTD. | ) |
| | ) |
| Appellant, | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) Case No. 13-1425 |
| | ) |
| Appellee, | ) |
| | ) |
| and | ) |
| | ) |
| CARPENTER TECHNOLOGY | ) |
| CORPORATION | ) |
| | ) |
| Appellee | ) |

_____)

**Appeal from a decision of the U.S. Court of International Trade
(by the Honorable Richard W. Goldberg, Senior Judge)
affirming an antidumping decision of the
U.S. Department of Commerce**

## PRINCIPAL BRIEF OF MUKAND, LTD.

Peter J. Koenig
Squire Sanders (US) LLP
1200 19th Street, NW, Suite 300
Washington, DC  20036
tel. 202 626 6223
peter.koenig@squiresanders.com
Counsel to Mukand, Ltd.

September 17, 2013

Form 9

FORM 9.   Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Mukand, Ltd. _____ v. United States _____

No. 2013-1425

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Mukand, Ltd. _____ certifies the following (use "None" if applicable; use extra sheets
if necessary):

1.      The full name of every party or amicus represented by me is:


Mukand, Ltd.
_____

2.      The name of the real party in interest (if the party named in the caption is not the real
party in interest) represented by me is:


Not applicable
_____

3.      All parent corporations and any publicly held companies that own 10 percent or more
of the stock of the party or amicus curiae represented by me are:


Mukand, Ltd. has no parent company.
_____

4. ☑   The names of all law firms and the partners or associates that appeared for the party
or amicus now represented by me in the trial court or agency or are expected to appear in this
court are:

Squire Sanders (US) LLP -- Peter J. Koenig, Esq.
_____

17 SEPT 2013 _____          /s/ Peter J. Koenig _____
        Date                       Signature of counsel

                              Peter J. Koenig _____
                                   Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................i

STATEMENT OF RELATED CASES .................................................v

JURISDICTIONAL STATEMENT ......................................................vi

STATEMENT OF ISSUES .............................................................. vii

SUMMARY OF ARGUMENT .............................................................1

ARGUMENT .....................................................................................2

I.  Adverse Facts Available ("AFA") As To Mukand Was Unlawful .....................3

    A.  Mukand Fully Answered All Commerce Requests ..................................3

    B.  Commerce Final Results' Other Claims Miss The Mark ........................7

II.  Application Of Total AFA Was Unlawful ......................................................10

THE OPINION IN QUESTION .........................................................15

PROOF OF SERVICE .......................................................................16

CERTIFICATE OF COMPLIANCE……………………………………………… 31

# TABLE OF AUTHORITIES

## Statutes

19 U.S.C. § 1516a(b)(1)(B)(i)...................................................................................3

19 U.S.C. § 1516a(b)(1)(B)(i)(1994)........................................................................3

19 U.S.C. § 1677m(d) ...............................................................................................3


## Federal Cases

*Am. Silicon Tech. v. United States,* 24 CIT 612, 624-25, 110 F. Supp. 2d 992,
    1003, 24 Ct. Int'l Trade 612 (2000) ......................................................................8

*D&L Supply Co. v. United States*, 113 F. 3d 1220, 1223 (Fed. Cir. 1997) ..............7

*F.LLI de Cecco di Filippos Fara S. Martino S.p.A. v. United States,* 216 F.3d
    1027, 1032 (Fed. Cir. 2000)................................................................................11

*Mukand Shantou Red Garden Foodstuff Co. v. United States,* 815 F. Supp. 2d
    1311, 1317-1326 (CIT Jan. 13, 2012).................................................................8

*NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995) .......7, 11

*Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 23 CIT __, __ n.2,
    Slip Op. 99-117 at 36-38 (Oct. 28, 1999)...........................................................5

*Usinor Sacilor v. U.S.*, 907 F. Supp. 426, 427 (CIT 1995) ......................................8


## Agency Decisions

*Certain Circular Welded Non-Alloy Steel Pipe from Mexico* (Inv. A-201-805),
    76 FR 36086 (Dept. Comm. June 21, 2011) IDM, Comment 4 at 20 ...................9

*Certain Woven Electric Blankets from China* (A-570-951), 75 FR 38459
    (Depart. Comm. July 2, 2010) IDM Comment 1 at p.4..........................................9

*Cold-Rolled Flat-Rolled Carbon-Quality Steel Products from Turkey,*
    65 FR 15123 ( Dept. Comm. March 21, 2000), IDM, Comment 1 ........................8

*Stainless Steel Bar From India*, 69 FR 55409 Dept. Comm. (Sept. 14, 2004), IDM
    at Comment 1 .......................................................................................................8

*Stainless Steel Bar from India: Final Results of the Antidumping Duty Administrative Review, and Revocation of the Order, in Part,* 76 FR 56401 (Dept. Comm. Sept. 13, 2011) ..............................................................................2

## STATEMENT OF RELATED CASES

None.  There has been no other appeal of the subject contested decision – *i.e.,* whether in or from this same civil action or proceeding in the lower court or body, much less previously before this or any other appellate court.

# JURISDICTIONAL STATEMENT

1.  This is an appeal of a decision by the U.S. Department of Commerce (the "Department" or "Commerce") in an administrative review determination of the antidumping duty order on Stainless Steel Bar from India -- *i.e., Stainless Steel Bar from India*, 76 FR 56,401 (Dep't Commerce Sept. 13, 2011) (final results of antidumping duty administrative review and partial order revocation) ("*Commerce Final Results*") and its accompanying Issues & Decision Memorandum (*Commerce Final Results IDM* or *IDM*).  They are respectively available at http://ia.ita.doc.gov/frn/2011/1109frn/2011-23390.txt and http://ia.ita.doc.gov/frn/summary/INDIA/2011-23390-1.pdf.  The decision was published in the Federal Register on September 13, 2011.

2.  Mukand appealed the *Commerce Final Results* to the U.S. Court of International Trade (CIT).  Specifically, on October 7, 2011, Mukand timely filed a summons, within 30 days of the September 13, 2011 Federal Register publication of the *Commerce Final Results.*  Mukand also filed its complaint on October 7, 2011, which was timely, as within 30 days of the filing the summons.  The CIT had jurisdiction of this matter per § 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2006) and 28 U.S.C. § 1581(c) (2006).

3.  On March 25, 2013, the CIT issued its opinion and judgment on Mukand's appeal to the CIT.  This was a final CIT judgment that disposed of all parties' claims.  See *Mukand v. United States,* Court No. 11-00401, Slip Op. 13-41 (Ct. Int'l Trade March 25, 2013) ("*CIT Opinion*"),  available at http://www.cit.uscourts.gov/SlipOpinions/Slip_op13/13-41.pdf.

4.  On May 23, 2013, Mukand appealed that CIT opinion and judgment to this Court.  This appeal is timely.  It was filed within 60 days of the *CIT Opinion* and judgment.  This Court has jurisdiction of this appeal under 28 USC § 1581(c) and 28 U.S.C. § 1295(a)(5), as it is an appeal of a CIT decision as to a Commerce antidumping determination in an administrative review.

## STATEMENT OF ISSUES

1.  May Commerce impose adverse facts available (AFA) in an antidumping investigation or review on a respondent for a claimed failure to answer a question that Commerce did not specifically ask, in contravention of the statute?

2.  Commerce's normal practice is to impose only <u>partial</u> AFA when there is limited minor missing information and otherwise use the respondent's submitted information to calculate the dumping margin.  The objective is to satisfy the statutory mandate to most accurately calculate the dumping margin, while imposing adverse facts only on the missing information to deter non-compliance. May Commerce under such circumstances depart from that practice and instead just reject all the respondent's questionnaire responses and impose <u>total</u> AFA?

## BRIEF STATEMENT OF THE CASE

1.  This is an appeal of the following determination by the U.S. Department of Commerce in its antidumping administrative review of the antidumping duty order on Stainless Steel Bar from India -- *i.e., Stainless Steel Bar from India*, 76 FR 56,401 (Dep't Commerce Sept. 13, 2011) (final results of antidumping duty administrative review and partial order revocation) ("*Commerce Final Results*"). and its Issues & Decision Memorandum (*Commerce Final Results IDM* or *IDM*), Commerce issued the decision September 13, 2011.

2.  Mukand appealed Commerce's final determination to the U.S. Court of International Trade (CIT).  The CIT affirmed Commerce's decision in *Mukand v. United States,* Court No. 11-00401, Slip Op. 13-41 (Ct. Int'l Trade March 25, 2013) , available at http://www.cit.uscourts.gov/SlipOpinions/Slip_op13/13-41.pdf (*CIT Opinion*).

3.  We appealed that CIT decision to this Court.

## STATEMENT OF RELEVANT FACTS

We include the statement of relevant facts in the body of the below Argument as to each argument, citing the pertinent record at the time that the particular argument is made.

## SUMMARY OF ARGUMENT

Mukand contests the *Commerce Final Results* (76 FR at 56402) that Mukand did not cooperate to the best of its ability to answer Commerce's questionnaires, warranting a total adverse facts available (AFA) dumping margin. Mukand fully answered Commerce's specific questions, such that the statutory condition for adverse inferences -- *i.e.*, failure to answer a Commerce request (Section 776(b) of the Tariff Act of 1930, as amended) -- is not met. Mukand's dumping margin should have been based on Mukand's submitted data, per statute.

Commerce asked for any unit cost variance by size, but only if there was a reasonable, verifiable method to determine. Mukand answered that there was no reasonable, verifiable way to do. Only in the *Commerce Final Results* did Commerce say that Mukand should instead have provided the unit cost variance by size in the best way possible even if not reasonable and verifiable, and penalize Mukand for failure to do so. Commerce wrongly penalized Mukand for failure to provide what Commerce did not specifically request.

Further, the *Commerce Final Results'* use of total adverse facts available (AFA) against Mukand – *i.e.,* rejecting all the Mukand information for consideration to calculate the dumping margin -- was unlawful. As a matter of law, partial AFA should have been used, for the only claimed missing information – *i.e.*, the claimed missing variance in unit costs of the sixth and least important

product matching characteristic – and just one of the 136 data fields for which

Commerce requested full individual sales and product cost data for the twelve

month period of investigation to calculate dumping margins, and which Mukand

provided.  Only doing so – i.e., using Mukand's data to the extent possible to

calculate Mukand's dumping margin and just using partial adverse facts as to the

minor claimed missing data -- conforms to the statutory mandates to (1) most

accurately calculate the dumping margin; while (2) insuring the statutory objective

that a party not achieve a more favorable result by failing to answer a particular

question and to motivate respondent cooperation.  Indeed, that partial AFA

approach has been Commerce's practice.  Commerce fails to explain its departure

from its own precedent.

## ARGUMENT

Appellant Mukand, Ltd. contests the final decision of the U.S. Department

of Commerce ("Commerce") in Commerce's review of the antidumping order

Stainless Steel Bar from India for the February 1, 2009 to January 31, 2010

administrative review period -- *i.e.*, (a) *Stainless Steel Bar from India: Final

Results of the Antidumping Duty Administrative Review, and Revocation of the

Order, in Part* (Inv. A-533, 810),76 FR 56401 (Dep't. Commerce, Sept. 13, 2011),

available at http://ia.ita.doc.gov/frn/2011/1109frn/2011-23390.txt ("*Commerce

Final Results*"); and, (b) its accompanying Aug. 31, 2011 Issues and Decision

Memorandum (*Commerce Final Results IDM* or *IDM*) , available at

http://ia.ita.doc.gov/frn/summary/INDIA/2011-23390-1.pdf.\  This decision was

affirmed by the U.S. Court of International Trade ("CIT").  *See Mukand  v. United*

*States,* Court No. 11-00401,  Slip Op. 13-41 (Ct. Int'l Trade March 25, 2013),

available at http://www.cit.uscourts.gov/SlipOpinions/Slip_op13/13-41.pdf. ("*CIT*

*Opinion*").

    In reviewing judgments from the CIT in antidumping proceedings, this

Court reapplies the review standard of 19 U.S.C. § 1516a(b)(1)(B)(i) to the

Commerce decision, as did the CIT.[1]  In so doing, this Court reverses a Commerce

determination unsupported by substantial evidence on the record, or otherwise not

in accordance with law.[2]  Under this review standard, the *Commerce Final Results*

should be reversed.

## I.    ADVERSE FACTS AVAILABLE ("AFA") AS TO MUKAND WAS UNLAWFUL

### A.    Mukand Fully Answered All Commerce Requests

    The *Commerce Final Results* faults Mukand for not reporting claimed

differences by size (diameter) in the unit (*i.e.*, per kilogram) cost of production of

subject stainless steel bar.

---

[1]  *Atlanta Sugar, Ltd. v. United States*, 744 F.2d 1556, 1559 (Fed. Cir. 1984).

[2] 19 U.S.C. § 1516a(b)(1)(B)(i)(1994).

Initially note that Mukand does not calculate unit production cost on such a size-specific basis in its ordinary course of business.[3]  Further, Mukand production experience was that such unit cost did not significantly vary with size.[4]

But that is not the basis of Mukand's objection before this Court.  Rather, it is that Mukand fully answered Commerce's specific questions on this issue and so acted to the best of its ability.  Thus, adverse inferences were not permissible.

Commerce requested that Mukand report unit costs on a size-basis, if it could be done in a reasonable, verifiable way.[5]  Commerce further said that, if cost differences are insignificant, then state why.[6]

Mukand detailed that, under its particular production process, any analysis of unit production cost differences by size must consider the nine separate production processes involved in the production of stainless steel bar – *i.e.*, annealing, heat treatment, pickling, drawing, reeling, grinding, peeling, polishing, and rolling.  Any impact of size on processing time as to each of the nine processes is not the same.  Processing time can be less or more for increased sizes in ways that vary by the particular process, meaning no net impact of size on unit cost. Mukand further indicated that there was no reasonable and verifiable way to report

---

[3] *Commerce Final Results IDM* at 28; A1612.  A1612 is page 1612 of the Appendix to be filed with this Court after briefing is done.  A1002-03.

[4] *Id.*

[5] A200 (Q. 14); A402(Q2); A805; A400; *IDM* at 29 & 32; A1405.

[6] A402; A602; A600 (Q14).

the net impact of size on unit cost.[7]  Commerce's sole and unsupported focus on

just <u>one</u> of the nine production processes – *i.e.,* the rolling process (*Commerce*

*Final Results IDM* at 27-28) -- does not properly determine any relationship

between unit <u>total</u> cost and size, much less is substantial evidence thereof, when

considering all nine production processes in aggregate.

    Notably, U.S. producer petitioners never objected that, based on their own

experience as to production of the subject stainless steel bar, Mukand's analysis

here was factually wrong, much less provided any contrary information per their

own production experience as to stainless steel bar, as to the specific issues

Mukand raised.[8]

    The *Commerce Final Results* ultimately claim (*IDM* at 30-31), <u>for the first</u>

<u>time in the proceeding ,</u> that Mukand, if acting to the best of its ability, would have

(a) reported the requested unit product costs by size even if no reasonable,

verifiable way to do so; and, (b) then allowed Commerce and interested parties to

analyze and assess the reasonableness and verifiability of Mukand's methodology.

But Commerce never made such a request of Mukand – *i.e.*, report as best can,

even if believed not a reasonable, verifiable way to do.[9]  The *CIT Opinion* and

*Commerce Final Results* cite no such specific Commerce request.  Commerce

---

[7]  On all these points, *see* A1002-04 and A602 (Q2).

[8]  A604; A1408.

[9]  A1405; A1003-04.

cannot expect a respondent to be a mind-reader, or to do what Commerce has not requested, and indeed indicated it did not want – *i.e.,* provide believed unreasonable and unverifiable information as to its situation. And of course it is too late for Mukand to do anything when Commerce only says what it really wanted in its final decision. Failure to provide information that Commerce did not request is not a lawful basis for AFA under 19 U.S.C. § 1677m(d) of the statue .[10]

Commerce just repeated the same question multiple times, asking for size-specific unit stainless steel bar costs, but again each time emphasizing that only if could be done in a reasonable and verifiable way. Indian stainless stainless bar producer Mukand, believing they could not be, would of course give the same answer. That is no evasion, as the *CIT Opinion* (at 10) says, but rather a respondent giving a straightforward, honest answer to the specific question asked. The Government's claim that what Commerce really wanted, though did not request, must have been "obvious" (*CIT Opinion* at 9) cannot be a substitute for Commerce actually asking the question it really wants answered, asking for specifically what it wants, and especially when Commerce finds that the answer to the question Commerce is actually asking is not what Commerce wants.

As the courts have stressed,

---

[10]  *Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 23 CIT __, __ n.2, Slip Op. 99-117 at 36-38 (CIT Oct. 28, 1999) (finding that, where Commerce had failed to request information "specifically," it had failed to provide the respondent with sufficient notice under 19 U.S.C. § 1677m(d) to warrant adverse inferences).

The statute authorizes Commerce to use an adverse inference if an interested party fails to 'cooperate by not acting to the best of its ability to comply with *a request for information from the administering authority* . . . ." 19 U.S.C. § 1677e(b) (emphasis added) … the Department erred when it decided to use an adverse inference. … Commerce construed its "request[s] for information," 19 U.S.C. § 1677e(b), differently than how those requests actually were communicated to {the respondent}) …the requests for information were more limited than Commerce later assumed…Because of the way Commerce defined its information requests, Commerce could not lawfully use an adverse inference under § 1677e(b) based on its irrelevant finding that {the respondent} in responding to those requests, did not attempt to {do more than that requested})….The record does not support a finding that {the respondent} failed to act to the best of its ability to comply with the information requests in the form in which Commerce actually communicated those requests. …The various questionnaires never directed {the respondent} to obtain or attempt to obtain {what Commerce now wants} … Commerce mischaracterizes the record.  Commerce had multiple opportunities to communicate such an expectation {what it really wanted} to {the respondent} but never did so.[11]

### B.    *Commerce Final Results'* Other Claims Miss The Mark

The *Commerce Final Results* (*IDM* at 26-30) offer various other unsupported claims.

1.  The *Commerce Final Results* claim (*IDM* at 28-30) that, since Mukand participated in prior dumping reviews or investigations, it could report size-wise unit costs, and using a reasonable, verifiable method.  The *Commerce Remand*

---

[11]   *Mukand Shantou Red Garden Foodstuff Co. v. United States,* 815 F. Supp. 2d 1311, 1317-1326 (CIT Jan. 13, 2012).  *See also Am. Silicon Tech. v. United States,* 24 CIT 612, 624-25, 110 F. Supp. 2d 992, 1003, 24 Ct. Int'l Trade 612 (2000) ("the Court found that Commerce's use of adverse facts was inappropriate because it was 'not clear' that the 'numerous opportunities' afforded to respondent were meaningful opportunities to respond."); *Usinor Sacilor v. U.S.*, 907 F. Supp. 426, 427 (CIT 1995) (Unlawful to apply facts available if Commerce has issued "potentially misleading questions.")

*Results* do not actually claim any such prior Mukand reporting, much less support the claim with substantial evidence. The reason is that the claim is wrong. It is also not clear why, if Mukand has satisfactorily answered the same questionnaires in the past without reporting size-specific unit cost differences, it should be expected to do otherwise in this review, based on that past experience. But that seems to be the claim here.

2. The *Commerce Final Results* claim (*IDM* at 30), again without any support, much less substantial evidence, that Mukand should look to its own experience to report size-wise unit costs. That claim ignores the fact that Mukand in fact did, and did not record such cost differences in its ordinary course of business, as they were considered insignificant and not reasonably and verifiably measurable under Mukand's production process.[12]

3. The *Commerce Final Results* claim (*IDM* at 30-31), again without support, that because two other Indian stainless steel bar respondents in the review reported size-wise unit cost, so could Mukand. That claim is unsupported. Commerce provided no evidence (much less substantial evidence) that the issues that Mukand faced as to reporting size wise unit cost, given Mukand's particular described production processes, and that led Mukand to conclude that there was no way that it could reasonably and verifiability report unit cost on a size basis,

---

[12] A1002-03.

affected the other two respondents.  Indeed, while Commerce claims that these other two respondents reported size costs, Commerce cites no evidence (much less substantial evidence), that they did so in a reasonable and verifiable way, including considered the nine production processes at issue as to Mukand.

4.  After Commerce's preliminary decision rejecting Mukand's questionnaire responses for failure to report size-specific costs, and rejecting Mukand's explanation thereof, Mukand offered in its case brief before Commerce commenting on that Commerce preliminary determination to report size wise unit cost differences, even if the approach was not reasonable or verifiable, should Commerce desire.[13]  Here, Mukand was offering what Commerce had not requested, and in fact indicated that it did not want.  Indeed, Commerce had repeatedly said that it only wanted reasonable and verifiable costs, and so Mukand had answered those requests accordingly.  Commerce declined that Mukand offer, but with no supportable and detailed explanation as to why it could not consider the offer beyond the cavalier and not supported claim that it lacked time to do so.

The *Commerce Final Results* claim (*IDM* at 30-31) that this Mukand offer meant that Mukand could report unit costs on a size basis in the way Commerce requested -- *i.e.*, a reasonable and verifiable basis.  That claim is unsupported and just false, a disingenuous treatment of a Mukand offer.

---

[13]  A1405 & 1410.

The *CIT Opinion* (at 12) and Commerce fail to address the above points.

## II.    APPLICATION OF <u>TOTAL</u> AFA WAS UNLAWFUL

As the *CIT Opinion* states (at p. 8), AFA "should be a "reasonably accurate

estimate of the respondent's actual rate . . . with some built-in

increase intended as a deterrent to non-compliance," citing this Court's

decisions).[14]

Commerce violated such law when it applied <u>total</u> AFA – *i.e.*, total rejection

of all Mukand questionnaire responses – for Mukand's claimed failure to report

unit cost differences by size, the undisputed least important (*i.e.*, ranked sixth of

six, or last) product characteristic.[15]  Commerce found no other problems with

Mukand's extensive reported U.S. and home market sales and costs data and

questionnaire responses – *i.e.*, as to the 136 other requested data fields of

Commerce's standard dumping margin questionnaire issued to Mukand.  Further,

those production processes whose unit cost could even possibly vary with size,

accounted for only 2.4% of total cost.[16]

---

[14]    *F.LLI de Cecco di Filippos Fara S. Martino S.p.A. v. United States,* 216 F.3d 1027, 1032 (Fed. Cir. 2000).  Accord: *D&L Supply Co. v. United States*, 113 F. 3d 1220, 1223 (Fed. Cir. 1997); *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995 (Commerce has a duty to calculate dumping margins "as accurately as possible").

[15] *IDM* at 26 & 30.

[16]    A1409 (1897/80403 = 2.4%).  With the passage of time, confidential information may now be treated as public. We can do that with our own confidential information.

Under the statutory scheme, applying adverse facts just as to the claimed missing information – *e.g.*, just using the size specific unit production cost data from the other respondents, acknowledged to be on the record (see *Commerce Final Results IDM* at 30-31), but in some adverse way;[17] or, (b) some other approach, in some partial adverse fact way – fully addresses claimed missing data as to unit cost differences by size.  Commerce fails to indicate how such action here would not achieve the above statutory goals.  The *CIT Opinion* (at 15) that partial AFA is not adverse is by definition wrong, and contrary to Commerce practice thereon.

Not using Mukand's submitted questionnaire responses for the great bulk of the information required to accurately calculate Mukand's dumping margin (*i.e.*, home and U.S. market sales data and cost differences for all the deemed most important physical characteristics), other than the acknowledged least important product matching trait accounting for under 2.4% of costs (see above), violates the statutory mandate to accurately calculate the dumping margin of a respondent to the extent possible, and just apply partial AFA as to any claimed missing data.

The *Commerce Final Result*s' generic explanation for total AFA (*i.e.,* totally rejecting a respondent's submitted data) applies essentially to all cases where there is some missing information.  Thus, it is no real explanation as to whether to use

---

[17] *IDM* at 26; A1616.

total or partial AFA, a decision which Commerce makes all the time and must be rationally and consistently based to be lawful.

Commerce essentially says (*IDM* at 32) that doing partial adverse facts available only as to the claimed missing information would not be adverse. That on its face is wrong. Adverse assumptions are being made as to size-specific costs from other respondents reported size-specific costs. Commerce does that all the time, in partial AFA situations. Indeed, the *CIT Opinion* (at 15) cites a 2000 Indian stainless steel bar Commerce case where such size-specific data was applied in an adverse way. It can be done in an adverse way whether it is the respondent's own data or another respondent's data. The *Commerce Final Results* claim here would essentially rule out partial AFA in all cases, and yet Commerce applies partial AFA all the time.

Commerce's claim (*IDM* at 30-31) that it has applied total AFA under similar circumstances in other cases is unsupported. All these cases involved far more egregious conduct – *i.e.*, wholesale failure to answer Commerce questionnaires, or to be verified, as opposed to just claimed missing data as to unit cost differences associated with the sixth and last (least important) product characteristic.[18]

---

[18]    Cited total AFA situations: *Cold-Rolled Flat-Rolled Carbon-Quality Steel Products from Turkey,* 65 FR 15123 (Dep't Commerce March 21, 2000), *IDM*, Comment 1 (Respondent provided cost differences for only one of the fourteen deemed important physical characteristics

Indeed, Commerce's own cited decisions here support partial AFA here; to wit,

> Section 776(b) of the Act further provides that the Department may use an adverse inference in applying the facts otherwise available on the record <u>for specific items of information requested by the Department</u> { not provided, *i.e.,* partial AFA}which are to be used in the computation of a margin when a party has failed to cooperate by not acting to the best of its ability to comply with a request for information. *See Certain Woven Electric Blankets From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 75 FR 38459 (July 2, 2010) and the accompanying Issues and Decisions Memorandum at Comment 1.[19]

Similarly, the *CIT Opinion* (at 6-7) acknowledges that, where particular data is missing, Commerce under the statute uses facts available to "fill in the gaps" as to the particular missing data. That is, partial AFA is used where discrete data is not usable. Total AFA is only used where none of the data is useable. *CIT Opinion* at 13 (cites Federal Circuit decisions). Here, it is acknowledged that all

---

and did not account for differences in raw materials used to produce different products); *Stainless Steel Bar From India*, 69 FR 55409 (Dept. Commerce Sept. 14, 2004), IDM at Comment 1 (Respondent completely fails to report period of review costs, reconcile what it did report to its cost accounting system, adequately describe any of the costs that it reported, failed to provide any requested worksheets for any cost, did not answer multiple questions, did not describe its cost accounting system, reported SG&A incorrectly, failed to report average costs irrespective of where product sold, etc.); *Circular Welded Non-Alloy Steel Pipe from Mexico,* 76 FR 36086 (Dept. Commerce June 21, 2011) & IDM at Comment 4 (Respondent did not provide any product-specific costs for any of the product characteristics, even though it did have normal course of business record-keeping to provide such data in prior reviews that it did not maintain for the current review, where in any event at a minimum such records from prior review could have been used for allocation in the current review). In stark contrast, it is undisputed that Mukand did none of the above, with at best missing unit size costs.

[19] *Certain Circular Welded Non-Alloy Steel Pipe from Mexico*, (Inv.A-201-805), 76 FR 36086 (Dep't. Comm. June 21, 2011), IDM, Comment 4 at 20, available at http://ia.ita.doc.gov/frn/summary/MEXICO/2011-15461-1.pdf.

Mukand data is usable except at best claimed missing size-specific unit cost differences.

In the above cited decision *Certain Woven Electric Blankets from China* (A-570-951), June 25, 2011, IDM Comment 1 at p.4 available at http://ia.ita.doc.gov/frn/summary/PRC/2010-16198-1.pdf , a significant portion of the respondent's costs (factors of production or FOPs) and U.S. sales data could be used to calculate a dumping margin and were used, even though other factors of production could not be used.  Commerce used partial, not total, AFA as warranted.  The *CIT Opinion* (at 13) fails to address this case law.

## <u>CONCLUSION</u>

We respectfully request that this Court remand the *Commerce Final Results* for a decision in accordance with law in the above respects.

Respectfully submitted,

/s/Peter J. Koenig
Peter J. Koenig
Squire Sanders (US) LLP
1200 19th Street, NW, Suite 300
Washington, DC 20036
Tel: (202) 626-6600
Fax: (202) 626-6780
peter.koenig@ssd.com

Dated: September 17, 2013                    *Counsel for Plaintiff Mukand, Ltd.*

Slip Op. 13-41

UNITED STATES COURT OF INTERNATIONAL TRADE

MUKAND, LTD.,

                  Plaintiff,

v.

UNITED STATES,

                  Defendant,

and

CARPENTER TECHNOLOGY
CORPORATION,

                  Defendant-Intervenor.

Before: Richard W. Goldberg, Senior Judge
Court No. 11-00401

**PUBLIC VERSION**

### OPINION AND ORDER

[Plaintiff's Motion for Judgment on the Agency Record under USCIT Rule 56.2 is denied.]

Dated: March 25, 2013

*Peter J. Koenig*, Squire Sanders (US) LLP, of Washington, DC, for plaintiff.

*David D'Alessandris*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With him on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director. Of counsel on the brief was *Melissa M. Brewer*, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

*Grace W. Kim*, Kelley Drye & Warren LLP, of Washington, DC, for defendant-intervenor.

      Goldberg, Senior Judge: Plaintiff Mukand Ltd. ("Mukand") contests the final results of the U.S. Department of Commerce's (the "Department" or "Commerce") administrative review of the antidumping duty order on Stainless Steel Bar from India. *Stainless Steel Bar from India*, 76 Fed. Reg. 56,401 (Dep't Commerce Sept. 13, 2011) (final results of antidumping duty administrative review and partial order revocation) ("*Final Results*"). Mukand asserts that the

Department erred in applying adverse facts available ("AFA") when calculating Mukand's

dumping margin for the period of review. Alternatively, Mukand argues that even if resort to

AFA was appropriate, the Department nonetheless erred in employing "total AFA" instead of

"partial AFA" to arrive at the dumping margin.  For the reasons set forth below, the court denies

Mukand's Rule 56.2 Motion for Judgment on the Agency Record and sustains Commerce's

determination to apply total AFA.

## FACTUAL BACKGROUND

On March 30, 2010, the Department initiated an administrative review of the

antidumping duty order on Stainless Steel Bar from India, pursuant to the request of domestic

interested parties.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*

*and Request for Revocation in Part*, 75 Fed. Reg. 15,679 (Dep't Commerce Mar. 30, 2010).  As

part of that review, the Department issued a series of questionnaires to Mukand wherein it sought

information designed to assist the Department in calculating Mukand's dumping margin.  Most

relevant to this case, Commerce requested that Mukand report the costs attributable to producing

various sizes of stainless steel bar.[1]  According to Commerce, this information was necessary to

accurately perform its sales-below-cost test, to calculate the difference in merchandise

("DIFMER") adjustment, and potentially to arrive at a constructed value.  *See, e.g.*, Issues &

Decision Memorandum, A-533-810 (Aug. 31, 2011), at 26 ("*I&D Mem.*").

Commerce first requested size-specific cost information in its initial questionnaire to

Mukand.  Admin. R. Pub. Doc. ("P.R.") 54, at D-25.  Upon receipt of Mukand's response,

Commerce noted that Mukand assigned the same production costs across all product sizes.

Informing Mukand that it did "not consider one broad based average cost to be reasonable for

---

[1] In this case, size was one of the six product characteristics making up the CONNUM.  P.R. 5, at 3 ("*AFA Mem.*").
The remaining characteristics were general type of finish, grade, re-melting, type of final finish, and shape.  *Id.*

purposes of" its calculations, Commerce stated that it was "imperative" that Mukand furnish

unique costs regardless of whether it tracked such costs in its normal accounting records.  P.R.

108, at 3.  Commerce alternatively afforded Mukand the opportunity to "quantify . . . and

explain" any reasons the company may have for believing the size-based cost differential to be

insignificant.  *Id.*

In its response, Mukand declined to provide unique cost information and instead

attempted to explain why its costs did not vary from one product size to the other.  *Id.* at 3–4.

Specifically, Mukand briefly responded that where product grade and type of finishing operation

are the same, direct material costs do not vary with size.  *Id.*  In a subsequent questionnaire,

Commerce reiterated its need either for cost estimates or a more thorough narrative quantifying

and explaining Mukand's belief that size-based cost differences were insignificant.  P.R. 145, at

8–9.  Again, Mukand asserted that when all other physical characteristics remain the same, costs

do not vary with size.  *Id.* at 9.

Commerce attempted to elicit the information a fourth time, noting that it "would appear

as though large sizes would require less processing and would incur less processing than smaller

sizes."  P.R. 172, at 1.  Mukand conceded that "[t]heoretically," there could be a cost difference,

but that it was insignificant because smaller sizes could be processed at faster speeds than larger

sizes.  *Id.* at 2.  However, Mukand did not provide any quantifiable data to support its assertion

because it believed the costs associated with those calculations were greater than the benefit.  *Id.*

Unsatisfied with Mukand's narrative, Commerce sought the information a final time

before releasing its preliminary results.  In its supplemental questionnaire, Commerce identified

and elaborated on several flaws that it perceived in Mukand's response.  Specifically, Commerce

sought information with respect to two factors, rolling time and weight, that it believed would

impact size-based costs.[2]  P.R. 206, at 1–5.  To assist Mukand in explaining why those factors

did not significantly affect costs, Commerce asked a series of targeted and specific questions.  *Id.*

The Department also instructed Mukand to contact them if their request was unclear, if Mukand

was unable to supply the information, or if the Department was otherwise mischaracterizing

Mukand's production processes.  *Id.*   Commerce made clear that failure to cooperate with its

request could result in reliance on facts available.  *Id.* at 5.

Mukand did not contact the Department, but again attempted to explain its basis for not

reporting size-specific costs.  Mukand acknowledged that there was likely a cost difference

among sizes, however it "fe[lt] from experience" that the difference was insignificant and that, in

any event, there was no "reasonable *and* verifiable way" to estimate the costs.  *Id.* at 2–4.

Mukand apparently thought that Commerce's reliance on rolling time and weight ignored the

company's broader production process.  Essentially, Mukand maintained that size-based

production costs varied depending on the processing stage.  For example, while smaller bars

incurred greater production costs than larger bars at the hot rolling stage, the opposite was true of

production costs at the heat treating stage.  *Id.*  The result of the different production processes,

Mukand maintained, was that variable size-based costs were virtually the same on the aggregate.

*Id.*  Nonetheless, Mukand provided no concrete data in support of this argument, believing there

existed no "reasonable *and* verifiable way" to isolate the costs.  *Id.* at 2–4.

Ultimately finding Mukand's collective responses deficient, Commerce preliminarily

resorted to AFA to calculate Mukand's dumping margin.  *Stainless Steel Bar from India*, 76 Fed.

Reg. 12,044, 12,047 (Dep't Commerce Mar. 4, 2011) (preliminary results).  In comments on the

---

[2] With respect to rolling time, Commerce believed that smaller bars would have undergone more rolling and, thus, would be associated with a longer rolling time and an enhanced rolling cost.  With respect to weight, Commerce noted that smaller, lighter bars should have a higher per kilogram rolling cost than larger, heavier ones.  Therefore, weight would also presumably impact size-based costs. P.R. 206, at 2.

preliminary results, Mukand argued that it materially complied with Commerce's requests since there was no reasonable and verifiable method of reporting size-specific production costs. P.R. 241, at 5–6. However, in a seeming reversal, Mukand offered to submit the same information that it previously maintained was not reasonably obtainable. *Id.* at 10.

In its final results, Commerce refused to consider the new information because it could not review it, solicit interested party comments, and re-calculate a margin within the statutory timetables. *I&D Mem.* at 33. Therefore, Commerce continued to rely on AFA and assigned to Mukand an AFA rate of 21.02 percent. *Id.* at 34. This appeal followed.

## SUBJECT MATTER JURISDICTION AND STANDARD OF REVIEW

Mukand commenced this action under section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006). Accordingly, the Court has jurisdiction pursuant to 28 U.S.C. § 1581(c). This Court must uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Thus, the Court will not displace Commerce's adequately supported conclusions simply because reasonable minds may differ as to the proper outcome. *Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999). Commerce enjoys broad discretion when implementing U.S. antidumping law and "factual determinations supporting anti-dumping margins are best left to the agency's expertise." *F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000); *see also Ad Hoc Shrimp Trade Action*

*Comm. v. United States*, 33 CIT __, __, 675 F. Supp. 2d 1287, 1304 (2009) (addressing

Commerce's broad discretion in determining whether to apply AFA).

The Court employs a two-part analysis when assessing whether Commerce's statutory

construction is otherwise "in accordance with law." *Chevron, U.S.A., Inc. v. Natural Res. Def.*

*Council*, 467 U.S. 837, 842–43 (1984); *Wheatland Tube Co. v. United States*, 495 F.3d 1355,

1359 (Fed. Cir. 2007). Under the *Chevron* rubric, the Court first assesses "whether Congress has

directly spoken to the precise question at issue." *Chevron, U.S.A., Inc.*, 467 U.S. at 842. If it

has, then the Court must give effect to Congress's unambiguously expressed intent. *Id.* at 842–

43. If, however, the statute is silent or ambiguous with respect to the pertinent issue, the Court

defers to Commerce's reasonable statutory construction. *Id.* at 843.

## LEGAL FRAMEWORK FOR DETERMINATIONS BASED ON AFA

In an administrative review of an antidumping duty order, Commerce must determine

whether the subject merchandise "is being, or is likely to be, sold in the United States at less than

its fair value." 19 U.S.C. § 1673(1). To facilitate that determination, Commerce evaluates "the

normal value and export price (or constructed export price) of each entry of the subject

merchandise" and "the dumping margin for each such entry." *Id.* § 1675(a)(2)(A). U.S. law

defines the dumping margin as "the amount by which the normal value exceeds the export price

or constructed export price of the subject merchandise." *Id.* § 1677(35)(A). And that margin

serves as "the basis for the assessment of . . . antidumping duties on entries of merchandise

covered by the determination and for deposits of estimated duties." *Id.* § 1675(a)(2)(C).

To assist in calculating a dumping margin, Commerce requests information from

respondents through questionnaires. If a respondent (for any reason) fails to satisfactorily

respond to Commerce's requests for "necessary information," Commerce must use "facts

otherwise available" to fill the gap in the record caused by respondent's failure.  *Id.* § 1677e(a);

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003) (noting that (a)

focuses on respondent's failure to provide information, not on the reason for the failure).

However, before resorting to facts otherwise available, Commerce must satisfy the statutory

requirements of 19 U.S.C. § 1677m(d) and (e).  19 U.S.C. § 1677e(a); *see also Gerber Food*

*(Yunnan) Co. v. United States*, 29 CIT 753, 763–64, 387 F. Supp. 2d 1270, 1280–81 (2005).

Pursuant to § 1667m(d), Commerce shall "promptly inform the person submitting the

response of the nature of the deficiency" and "to the extent practicable, provide that person with

an opportunity to remedy or explain the deficiency in light of the time limits established" for

completion of the review. Though the burden of creating a complete, accurate record ultimately

rests on the respondent, Commerce must still ensure that the respondent is "fully aware of what

information the Department [seeks] and the form in which it [seeks] the data."  *SKF USA Inc. v.*

*United States*, 29 CIT 969, 980, 391 F. Supp. 2d 1327, 1336 (2005).

If Commerce finds that the party's proffered explanation is unsatisfactory or untimely, it

may "disregard all or part of the original and subsequent responses."  19 U.S.C. § 1677m(d).

Conversely, Commerce "shall not decline to consider" necessary information if:

> (1) the information is submitted by the deadline established for its submission, (2)
> the information can be verified, (3) the information is not so incomplete that it
> cannot serve as a reliable basis for reaching the applicable determination, (4) the
> interested party has demonstrated that it acted to the best of its ability in providing
> the information and meeting the requirements established by the administering
> authority or the Commission with respect to the information, and (5) the
> information can be used without undue difficulties.

*Id.* § 1677m(e).

After determining that the use of facts otherwise available is appropriate, Commerce may

further find that the record deficiency was caused by respondent's failure to act "to the best of its

ability" in complying with Commerce's requests.  *Id.* § 1677e(b).  If Commerce reaches that

conclusion, it may use an "adverse" inference—known as AFA—when selecting among facts

otherwise available. *Id.* The statute does not define what an adverse inference entails, but it

should be a "reasonably accurate estimate of the respondent's actual rate . . . with some built-in

increase intended as a deterrent to non-compliance." *F.lli De Cecco di Filippo Fara S. Martino*

*S.p.A.*, 216 F.3d at 1032.[3]

## DISCUSSION

### I. Commerce reasonably used AFA to calculate Mukand's dumping margin

Mukand's first challenge to the *Final Results* relates to Commerce's application of AFA

when selecting Mukand's dumping margin. Mukand asserts that since it complied with

Commerce's requests for size-specific cost information, Commerce erred in concluding that

Mukand failed to respond to the best of its ability. Pl.'s Mot. for J. on Agency R. ("Pl.'s Br.") at

2. And because a respondent's failure to act to the best of its ability is a prerequisite to the

application of AFA, Mukand maintains that Commerce's AFA determination was unlawful. *Id.*

Mukand's argument rests on the wording of Commerce's questionnaires. Specifically,

Mukand justifies its non-responsiveness on two grounds: (1) Commerce's questionnaires only

technically asked for size-specific costs if there existed a reasonable, verifiable way of isolating

and reporting those costs, and (2) in lieu of reporting size-based costs, Commerce authorized

Mukand to narratively explain why it believed that any cost differences attributable to product

size were insignificant. *Id.* at 3–4. Mukand asserts that it fully complied when it explained to

Commerce that there existed no reasonable, verifiable way of reporting size-specific costs, and

that in any event, variable costs did not significantly vary across product sizes. *Id.*

---

[3] The corroboration requirement in 19 U.S.C. § 1677e(c) constrains Commerce when selecting among potential
AFA rates. Pursuant to § 1677e(c), when Commerce relies on "secondary information" for its AFA rate (as it has
here), it must corroborate that information "to the extent practicable." The court does not address corroboration
since Mukand has not raised it.

The Government maintains that Mukand's reliance on semantics masks the obvious meaning of Commerce's request—namely, that Mukand either report size-based costs or quantify and explain in a detailed narrative why it believes that size had an insignificant impact on variable costs. Def.'s Opp'n to Pl.'s Mot. for J. on Agency Record ("Def.'s Br.") at 14–16. Despite Commerce's five separate attempts to elicit the necessary cost information, suggestions regarding how Mukand could compile that information, and offers to clarify the substance of its requests, Mukand failed to comprehensively address Commerce's questions. As a result, Commerce asserts, it reasonably concluded that Mukand failed to act to the best of its ability during the proceeding. Id. at 20.

## A. Necessary information was absent from the record

Mukand did not provide necessary information to Commerce in the proceeding below. To accurately perform its less than fair value analysis, Commerce must compare "the normal value and export price (or constructed export price) of each entry of the subject merchandise." Id. § 1675(a)(2)(A).[4] When calculating normal value, Commerce disregards foreign like product sales occurring below the cost of production. Id. § 1677b(b)(1). If no sales remain after disregarding below cost sales, Commerce constructs its own normal value for the subject merchandise. Id. Additionally, when Commerce compares physically dissimilar merchandise, it adjusts normal value to ensure a fair comparison between the foreign like product and the subject merchandise. Id. § 1677b(a)(6); 19 C.F.R. § 351.411 (2012). Commerce cannot calculate that DIFMER adjustment without knowing how certain physical characteristics affect the non-

---

[4] "'[T]he preferred methodology in reviews [is] to compare average [normal values] to individual export prices.'" Kyd, Inc. v. United States, 35 CIT __, __, 779 F. Supp. 2d 1361, 1369 n.3 (2011) (citing Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, at 843 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4178).

identical foreign like product's variable manufacturing cost.  19 C.F.R. § 351.411; *Thai Plastic*

*Bags Indus. Co. v. United States*, 34 CIT __, __, 752 F. Supp. 2d 1316, 1325 n.22 (2010).

In this case, Mukand's failure to report size-based costs prevented Commerce from

performing a sales-below-cost analysis, calculating a constructed value, and making applicable

DIFMER adjustments.  *See I&D Mem.* at 26.  In sum, Commerce did not have all the

information necessary to calculate Mukand's dumping margin.

### B.  Commerce provided adequate notice of the record deficiency

Commerce also complied with its notification duties under 19 U.S.C. § 1677m(d).  On

five occasions, Commerce attempted to elicit size-specific cost information.  On all but the first

occasion, Commerce made clear that it was unsatisfied with Mukand's response and reiterated

both what it needed and why that information was important.  In its final questionnaire,

Commerce even created a table for Mukand and offered to respond to any questions.

Thus, Mukand's assertion that Commerce never directly requested size-specific cost

information is meritless.[5]  Instead, the record reflects that Commerce repeatedly asked for

"imperative" size-based costs regardless of whether the company tracked such costs in its normal

books and records.  Mukand's narrow focus on Commerce's direction to report those costs using

a "reasonable" and "verifiable" method misses the broader picture.  Based on the record as a

whole, Commerce clearly included that language to *obtain* useable and necessary information,

not to provide Mukand with a basis for evading its requests.[6]

---

[5] The court is mindful of the fact that Mukand is comprised largely of non-English speakers; however, that is true of most respondents in these proceedings.  If Mukand was experiencing such difficulty in understanding Commerce's requests, it should have accepted Commerce's invitation for further discussion.

[6] Mukand does not appear to directly challenge Commerce's decision to disregard Mukand's narratives explaining why costs do not vary across product sizes.  Nonetheless, Commerce was within its discretion in not accepting Mukand's vague, unsupported assertions.  Commerce instructed Mukand to "explain" and "quantify" why size did not influence product costs, and Commerce reasonably found that Mukand's responses fell short of that threshold.

### C.  An adverse inference was appropriate under the circumstances

Lastly, Commerce reasonably adopted an adverse inference when selecting among the facts otherwise available.  The proper inquiry for AFA is not whether Mukand intended to thwart Commerce in its efforts to complete the record.  Rather, "[t]he statutory trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of respondent's ability, regardless of motivation or intent." *Nippon Steel*, 337 F.3d at 1383.  A respondent fails to act to the best of its ability if it does not to "do the maximum it is able to do." *Id.* at 1382.  Phrased differently, AFA is appropriate when a respondent has failed to "put forth its maximum effort to provide Commerce with full and complete answers to all inquiries." *Id.*

Mukand consistently avoided the substance of Commerce's size-based cost questions by offering only vague, unsupported assertions that the requested information was not reasonably available and that size did not significantly impact costs.  Despite Mukand's repeated assertions that the information was not part of their normal records and otherwise not possible to track, it was suddenly able to provide the requested information after Commerce's preliminary decision to apply AFA.  Moreover, Mukand's substantial experience with Commerce proceedings and the fact that other respondents were able to isolate size-based costs lends further support to Commerce's findings.  Based on the foregoing, Commerce reasonably found that Mukand did not do the maximum it was able to do and that AFA was appropriate.

### II. Commerce reasonably employed total AFA

Mukand next argues that even if resort to AFA was reasonable, application of total AFA was not.  Mukand claims that resort to total AFA violated Commerce's statutory mandate to accurately calculate dumping margins.  Pl.'s Br. at 7.  Further, Mukand maintains, Commerce's decision was inconsistent with its practice in prior proceedings of applying total AFA only to

"far more egregious conduct" and not to the comparatively less egregious conduct exhibited in this case. *Id.* at 8. Because Mukand's sole failure was in not reporting size-specific costs, Mukand believes Commerce should have employed partial AFA. *Id.* at 9.

The Government asserts that it acted consistently with its past practice. In support, it cites numerous instances where it employed total AFA in response to a foreign company's failure to provide product-specific cost of production or DIFMER adjustment information. Def.'s Br. at 18–20. The Government argues that Mukand's responses similarly warranted total AFA since they were "so incomplete" that they could not serve as a reliable basis for reaching a final determination and could not be used without undue difficulty. *See I&D Mem.* at 30.

### A.  Framework for distinguishing total AFA and partial AFA

Neither statutory nor regulatory law reference the concept known as total AFA, but Commerce uses it administratively to refer to "Commerce's application of adverse facts available not only to the facts pertaining to specific sales for which information was not provided, but to the facts respecting all of respondents' sales encompassed by the relevant antidumping duty order." *Shandong Huarong Mach. Co. v. United* States, 30 CIT 1269, 1271 n.2, 435 F. Supp. 2d 1261, 1265 n.2 (2006). Partial AFA, by contrast, is used "where there is useable information of record but the record is incomplete." *Wash. Int'l Ins. Co. v. United States*, Slip Op. 09-78, 2009 WL 2460824, at *8 n.18 (CIT July 29, 2009).

Case law has illuminated the circumstances Commerce should consider when deciding whether to apply total AFA or partial AFA. Total AFA is appropriate "where none of the reported data is reliable or usable" because, for example, all of the "submitted data exhibited pervasive and persistent deficiencies that cut across all aspects of the data." *Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011); *see also Foshan*

*Shunde Yongjian Housewares & Hardware Co. v. United States*, Slip Op. 11-123, 2011 WL 4829947, at *14 (CIT Oct. 12, 2011) (noting that total AFA involves a deficiency pertaining to "core, not tangential" information).  Partial AFA may be required when the deficiency is only "with respect to a discrete category of information." *Foshan Shunde*, 2011 WL 4829947, at *14.

When applying total or partial AFA, Commerce is also bound by statutory constraints on its ability to disregard deficient information.  Specifically, pursuant to 19 U.S.C. § 1677m(e), Commerce may only disregard "information" if it fails to meet any of five enumerated requirements.  This court has previously deferred to Commerce's interpretation of "information" to encompass *all* the information that a respondent submits as opposed to discrete categories of information. *Steel Auth. of India, Ltd. v. United States*, 25 CIT 482, 486, 149 F. Supp. 2d 921, 928 (2001).  This interpretation is reasonable.  If Commerce was constrained to consider some submissions, but not others, respondents could manipulate the process by submitting only beneficial information. *Id.*  As a result, "[r]espondents, not the Department, would have the ultimate control to determine what information would be used for the margin calculation," and the Department could not reliably calculate dumping margins. *Id.*

### B.  Commerce adequately supported its total AFA determination

In this case, Commerce decided that Mukand's submitted information collectively failed to satisfy at least two of the five requirements of § 1677m(e).  In particular, in its Issues & Decisions Memorandum, Commerce found that:

> Mukand's failure to provide the requested data renders its response unusable for these final results under section 782(e) [§ 1677m(e)] of the Act. The information Mukand did provide was so incomplete that it could not serve as a reliable basis for reaching a final determination because without the cost information based on size, the Department cannot conduct an adequate sales-below-cost test or calculate an accurate DIFMER adjustment for size. For example, size specific sales prices are compared to size specific costs in the sales below cost test, so without size specific costs, an accurate sales-below-cost test cannot be performed.

Furthermore, because the information was so incomplete, we find it cannot be used without undue difficulty.

*I&D Mem.* at 30.

Commerce could have reasonably concluded that Mukand's persistent failure to report size-based costs made the remaining information so incomplete that it could not "serve as a reliable basis for reaching a final determination." *See* 19 U.S.C. § 1677m(e)(3). To make an antidumping determination, the Department needs respondent data on U.S. sales, home market sales, cost of production, and constructed value. *Steel Auth. of India, Ltd.*, 25 CIT at 482, 149 F. Supp. 2d at 927. In this review, Commerce was missing a piece of cost information necessary to calculate the cost of production and constructed value. The absence of information so "vitally interconnected with other elements of the dumping determination" could have made Mukand's submitted information too incomplete for Commerce to reliably calculate a margin. *See* Issues & Decision Memorandum, A-533-810 (Sept. 14, 2004), at cmt. 1, p.12.

Moreover, because Commerce was unable to calculate cost of production or constructed value, it could have been unduly difficult for Commerce to apply partial AFA. Without cost information, Commerce could not disregard below cost sales. In that scenario, normally Commerce would find as AFA that all home market sales were below cost and, accordingly, look to constructed value. *See* Issues & Decision Memorandum, A-533-810 (Aug. 10, 2000), at Facts Available cmt. 1. However, here Commerce would also be unable to calculate constructed value without size-based cost information.[7]

---

[7] In this regard, the instant case is distinct from the prior stainless steel proceeding upon which Mukand relies to support its partial AFA argument. *See* Issues & Decision Memorandum, A-533-810 (Aug. 10, 2000). There, certain cost information was absent from the COP database, and Commerce found as AFA that all home market sales were below cost. *Id.* at Facts Available cmt. 1. Turning to CV, Commerce found that the respondent did submit useable CV information, but not in the format Commerce desired. *Id.* Commerce decided that a partial AFA was warranted given the deficiency, but rejected total AFA since the information was "sufficiently complete to serve as a reliable

Although Mukand posits that Commerce should have used other respondents' size-based data to fill the record gap, doing so would have impermissibly rewarded Mukand by allowing it to benefit from information provided by cooperative respondents.

Lastly, the fact that Commerce typically applies total AFA to more egregious conduct is not dispositive. While most total AFA cases do involve more severe record deficiencies, Mukand has not persuasively cited any authority establishing that Commerce's practice is to employ partial AFA in analogous factual circumstances. Based on the facts of this case, Commerce adequately supported its total AFA determination. Commerce has repeatedly noted that cost information is a vital part of its dumping analysis. *See I&D Mem.* at 30; Issues & Decision Memorandum, A-533-810 (Sept. 14, 2004), at cmt. 1; Issues & Decision Memorandum, A-489-808 (Mar. 21, 2000), at cmt. 1. Given its importance, Mukand's missing cost information did not create a deficiency with respect to a "discrete category of information" such that only partial AFA would be appropriate. *See Foshan Shunde*, 2011 WL 4829947, at *14. Rather, Commerce reasonably found that Mukand's missing information was essential for multiple calculations, thereby warranting total AFA.

## CONCLUSION AND ORDER

For the foregoing reasons, it is hereby ordered that Mukand's Rule 56.2 Motion for Judgment on the Agency Record is **DENIED** and the *Final Results* are **SUSTAINED**.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: March 25, 2013
        New York, New York

---

basis for reaching a determination without creating undue difficulties." *Id.* Unlike in that proceeding, Mukand did not submit *any* size-based costs.

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:

      US mail
      Fax
      Hand
      Electronic Means
      (by email or CM/ECF)

Name of Counsel                                  Signature of Counsel

Law Firm

Address

City, State, ZIP

Telephone Number

FAX Number

E-mail Address

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

Form 19

FORM 19.  Certificate of Compliance With Rule 32(a)

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑  The brief contains [      4644      ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐  The brief uses a monospaced typeface and contains [ state the number of ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑  The brief has been prepared in a proportionally spaced typeface using
[          Microsoft Word          ] in
[     Times New Roman Size 14 Font     ], or

☐  The brief has been prepared in a monospaced typeface using
[   state name and version of word processing program   ] with [
[   state number of characters per inch and name of type style   ] ].

_Peter Koenig_
(Signature of Attorney)

Peter Koenig
(Name of Attorney)

Appellant Mukand, Ltd.
(State whether representing appellant, appellee, etc.)

September 17, 2013
(Date)

Reset Fields

142