# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## 2013-1425

## MUKAND, LTD.,

Plaintiff-Appellant,

v.

## UNITED STATES,

Defendant-Appellee,

and

## CARPENTER TECHNOLOGY CORPORATION,

Defendant-Appellee.

Appeal from the United States Court of International Trade in case no. 11-CV-0401, Judge Richard W. Goldberg.

## BRIEF OF DEFENDANT-APPELLEE CARPENTER TECHNOLOGY CORPORATION

LAURENCE J. LASOFF
GRACE W. KIM
MARY T. STALEY

KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C. 20007
(202) 342-8400

Counsel for Defendant-Appellee
Carpenter Technology Corporation

December 16, 2013

**Form 9.** **Certificate of Interest**

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____Mukand, Ltd._____ v. _____United States_____

No. __2013-1425__

Certificate of Interest

Counsel for Defendant-Appellee, Grace W. Kim, certifies the following:

1.      The full name of every party or amicus represented by me is:

Carpenter Technology Corporation

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Carpenter Technology Corporation is not a subsidiary or affiliate of a publicly-owned corporation (but is itself a publicly-owned corporation trading under the New York Stock Exchange Symbol of "CRS" ).

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Kelley Drye & Warren LLP
Laurence J. Lasoff
Grace W. Kim
Mary T. Staley

_____December 16, 2013_____
Date

_Grace W. Kim_

Signature of counsel

Grace W. Kim
Printed name of counsel

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ................................................................. 1

STATEMENT OF THE ISSUES ..................................................................... 1

STATEMENT OF THE FACTS ...................................................................... 1

SUMMARY OF THE ARGUMENT .................................................................. 8

ARGUMENT .............................................................................................. 10

I.     STANDARD OF REVIEW ....................................................................... 10

II.    COMMERCE'S APPLICATION OF TOTAL ADVERSE FACTS AVAILABLE IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS OTHERWISE IN ACCORDANCE WITH LAW ...................................................................................... 12

    A.    Legal Standard ................................................................................. 12

    B.    Commerce Properly Found that Mukand Had Failed to Cooperate By Not Acting To the Best of Its Ability ...................... 14

        1.    Mukand Did Not Fully Answer All of Commerce's Requests ................................................................................. 14

        2.    Mukand's Contention That It Was Not Required To Submit the Requested Product-Specific Cost Data by Size Is Incongruous ...................................................... 19

    C.    Mukand Significantly Impeded The Proceeding ............................... 22

    D.    Commerce's Decision Does Not Miss the Mark ............................... 23

III.   COMMERCE'S APPLICATION OF TOTAL AFA IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS OTHERWISE IN ACCORDANCE WITH LAW ...................................... 26

IV.   CONCLUSION .................................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

Ad Hoc Shrimp Trade Action Comm. v. United States,
    675 F. Supp. 2d 1287 (2009) ............................................................. 11

Allied-Signal Aerospace Co. v. United States,
    996 F.2d 1185 (Fed. Cir. 1993)......................................................... 18

Corus Staal BV v. United States,
    395 F.3d 1343 (Fed. Cir. 2005)......................................................... 10

Foshan Shunde Yongjian Housewares & Hardware Co. v. United States,
    35 CIT __, __, 2011 Ct. Intl. Trade LEXIS 123 (Oct. 12, 2011) ..................... 27

Fujitsu Gen. Ltd. v. United States,
    88 F.3d 1034 (Fed. Cir. 1996).......................................................... 10

Koyo Seiko Co. v. United States,
    36 F.3d 1565 (Fed. Cir. 1994).......................................................... 11

Matsushita Elec. Indus. Co. v. United States,
    750 F.2d 927 (Fed. Cir. 1984)....................................................... 10-11

Mitsubishi Heavy Indus., Ltd. v. United States,
    275 F.3d 1056 (Fed. Cir. 2001)......................................................... 11

Mukand, Ltd. v. United States,
    Ct. No. 11-00401, Slip Op. 13-41 (CIT 2013)......................................... 8

Nippon Steel Corp. v. United States,
    337 F.3d 1373 (Fed. Cir. 2003)................................ 10-11, 13, 24, 26

United States v. Eurodif S.A.,
    555 U.S. 305 (2009).................................................................. 12

Washington Int'l Ins. Co. v. United States,
    33 CIT __, __, 2009 Ct. Int'l Trade Lexis 93 (July 29, 2009)........................ 27

## STATUTES

19 U.S.C. § 1677e(a) ................................................................. 12-13, 27

19 U.S.C. § 1677e(a)(2)(C) ................................................................. 22

19 U.S.C. § 1677e(b) ................................................................. 14

19 U.S.C. § 1677m(c)(1) ................................................................. 17-18

19 U.S.C. § 1677m(d) ................................................................. 13-14

19 U.S.C. § 1677m(e) ................................................................. 14

19 U.S.C. § 1677m(i)… ................................................................. 13

## ADMINISTRATIVE DETERMINATIONS

Certain Kitchen Appliance Shelving and Racks From the People's Republic
    of China: Final Determination of Sales at Less Than Fair Value,
    76 Fed. Reg. 36,656 (Dep't Commerce July 24, 2009) .................................... 29

Certain Woven Electric Blankets from the People's Republic of China:
    Issues and Decision Memorandum for the Final Determination
    (Dep't Commerce June 25, 2010), referenced in
    75 Fed. Reg. 38,459 (Dep't Commerce July 2, 2010) .................................... 29-30

Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof
    From the People's Republic of China:
    Final Results of Antidumping Duty Administrative Review,
    75 Fed. Reg. 3201 (Dep't Commerce Jan. 20, 2010) .................................... 29

Initiation of Antidumping and Countervailing Duty Administrative Reviews
    and Request for Revocation in Part,
    75 Fed. Reg. 15,679 (Dep't Commerce Mar. 30, 2010) .................................... 1-2

Issues and Decision Memorandum for the 2009-2010 Administrative
Review of Stainless Steel Bar from India
(Dep't Commerce Aug. 31, 2011) ("I&D Memo"), referenced in
Stainless Steel Bar from India: Final Results of the Antidumping
Duty Administrative Review, and Revocation of the Order, in Part,
76 Fed. Reg. 56,401 (Dep't Commerce Sept. 13, 2011) (final results)...... passim

Issues and Decision Memorandum for the Antidumping Duty Administrative
Review on Stainless Steel Bar from India – February 1, 2002 through
January 31, 2003 (Dep't Commerce Sept. 7, 2004), referenced in
69 Fed. Reg. 55,409 (Dep't Commerce Sept. 14, 2004) (final results)....... 18, 28

Issues and Decision Memorandum for the New Shipper Review
of Stainless Steel Bar from India (Dep't Commerce Dec. 14, 2007),
referenced in 72 Fed. Reg. 72,671
(Dep't Commerce Dec. 21, 2007) (final results) ................................................ 22

Notice of Final Determination of Sales at Less than Fair Value: Certain
Cold-Rolled Flat-Rolled Carbon-Quality Steel Products from Turkey,
65 Fed. Reg. 15,123 (Dep't Commerce Mar. 21, 2000)...................................... 28

Stainless Steel Bar from India:
Final Results of the Antidumping Duty Administrative Review,
and Revocation of the Order, in Part,
76 Fed. Reg. 56,401 (Dep't Commerce Sept. 13, 2011)
("Final Results") ........................................................................................2-3, 6-7

Stainless Steel Bar from India:
Preliminary Results of, and Partial Rescission of, the Antidumping Duty
Administrative Review and Intent Not to Revoke the Order, in Part,
76 Fed. Reg. 12,044
(Dep't Commerce Mar. 4, 2011) ("Prelim. Results")...................................... 2, 6

Stainless Steel Bar from India:
Final Results of Antidumping Duty Administrative Review,
63 Fed. Reg. 13,622 (Dep't Commerce Mar. 20, 1998)...................................... 24

Stainless Steel Bar from India:
Final Results, Rescission of Antidumping Duty Administrative Review
in Part, and Determination To Revoke in Part,
69 Fed. Reg. 55,409 (Dep't Commerce Sept. 14, 2004) ................................... 28

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Defendant-Appellee Carpenter Technology Corporation ("Carpenter" or "Defendant-Appellee") concurs with the statement of related cases of Plaintiff-Appellant Mukand, Ltd. ("Mukand") and is not aware of any other appeal in or from the same civil action or proceeding in the lower court previously before this or any other appellate court. In addition, Carpenter is not aware of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF THE ISSUES

1. Whether the U.S. Department of Commerce's application of adverse facts available to Mukand is supported by substantial evidence and is otherwise in accordance with law.

2. Whether Commerce properly rejected Mukand's questionnaire responses and imposed total adverse facts available in determining Mukand's dumping margin.

## STATEMENT OF THE FACTS

On March 30, 2010, Commerce initiated an administrative review of the antidumping duty order on Stainless Steel Bar from India for the period February 1, 2009 through January 31, 2010, pursuant to the request of Defendant-Appellee

Carpenter and other domestic interested parties.  Initiation of Antidumping and
Countervailing Duty Administrative Reviews and Request for Revocation in Part,
75 Fed. Reg. 15,679, 15,681 (Dep't Commerce Mar. 30, 2010) (Joint Appendix
("JA") .2000, 2002); and Stainless Steel Bar From India: Preliminary Results of,
and Partial Rescission of, the Antidumping Duty Administrative Review, and
Intent Not To Revoke the Order, in Part, 76 Fed. Reg. 12,044, 12,045 (Dep't
Commerce Mar. 4, 2011)  (hereinafter "Prelim Results") (A1197-98).

On April 13, 2010, Commerce issued its standard set of questionnaires to
Mukand.  Prelim Results, 76 Fed. Reg. at 12,045 (A1198).  After considering
Mukand's responses, Commerce issued several supplemental questionnaires in an
attempt to correct deficiencies and solicit additional information, which included
Mukand's costs of production.  Id. at 12,047 (A1200).  For example, in its initial
section D questionnaire, Commerce instructed Mukand to report product-specific
cost information that accounted for the different physical characteristics, such as
size, but Mukand failed to do so.  Letter from Mukand enclosing Response to
Sections B-D of the Department's Questionnaire (June 11, 2010) at D-25
(JA.2006, 2031).  Mukand instead assigned the same production costs across all
bar products produced, irrespective of size.  Issues and Decision Memorandum for
the 2009-2010 Administrative Review of Stainless Steel Bar from India (Dep't
Commerce Aug. 31, 2011) at 24-25 (JA.2112-13) (hereinafter "I&D Memo"),

referenced in Stainless Steel Bar from India: Final Results of the Antidumping

Duty Administrative Review, and Revocation of the Order, in Part, 76 Fed. Reg.

56,401 (Dep't Commerce Sept. 13, 2011) (hereinafter "Final Results") (JA.2125-

28). Commerce subsequently issued four supplemental questionnaires requesting

Mukand to report size-specific costs. I&D Memo at 24, 26 (JA.2112, 2114).

On August 9, 2010, Commerce issued its first supplemental questionnaire

and explained to Mukand that:

> Because of the significant variations in the physical
> characteristics and processing costs, the Department does
> not consider one broad based average cost to be
> reasonable for purposes of calculating the difference in
> merchandise adjustments, cost of production and
> constructed value. . . Therefore, it is imperative that you
> submit a new Section D database that includes a unique
> cost for each CONNUM as defined by the physical
> characteristics listed by the Department model match
> criteria at Appendix V of the antidumping duty
> questionnaire including any modifications made by the
> Department during this period of review.

I&D Memo at 25 (JA.2113) (citation omitted). Acknowledging that Mukand did

not allocate different costs to specific sizes in its normal books and records,

Commerce instructed Mukand to rely not only on its existing financial and cost

accounting records, but on other information that would allow it to reasonably

allocate its costs to the different sizes of bar products produced. Id. at 29

(JA.2117); see also Memorandum from Gary W. Urso to Neal M. Halper, Use of

Adverse Facts Available for the Final Results – Mukand Ltd., Including Analysis

of Reported Cost Differences for Size by Facor Steels, Ltd. (Dep't Commerce Aug. 31, 2011) (hereinafter "AFA Memo") at 5-6 (JA.2078, 2082-83). In addition, Commerce further instructed Mukand that if it believed that size did not contribute to cost differences between the products, it should "quantify and explain" its reasons for not reporting a cost difference. I&D Memo at 26 (JA.2114). Mukand, however, failed to provide cost differences for size. Instead, Mukand simply responded that where product grade and type of finishing operation are the same, direct material costs do not vary with size. Mukand's First Supplemental Section D QR Response (Aug. 31, 2010) at 3-4 (JA.2044, 2047-48).

On October 4, 2010, Commerce issued Mukand a second supplemental questionnaire reiterating that it was "imperative" that Mukand either provide size-specific costs or factual information showing that the cost differences due to size are insignificant. Mukand's Second Supplemental Section D QR Response (Oct. 26, 2010) at 8-9 (JA.2052, 2059-60). In response, Mukand again failed to provide cost differences for size. Mukand simply asserted that product size do not significantly affect its production costs and, therefore, it does not track such costs. Id. at 9 (JA.2060).

On November 22, 2010, the Department issued its third supplemental questionnaire again requesting Mukand to provide cost differences for size. Mukand's Third Supplemental Section D QR Response (Dec. 15, 2010) at 1-2

(JA.2062-64). To assist Mukand, Commerce explained and provided examples of how Mukand could capture this information by relying on information outside of its normal accounting records, such as its production records. In addition, Commerce further instructed that if there are no differences in costs for size, it should quantify and explain its reasons for not reporting a cost difference. Id. at 1 (JA.2063). Importantly, Commerce noted the large range of sizes of bar produced by Mukand and stated that it "would appear as though large sizes would require less processing and would incur less processing than smaller sizes." Id. In its response, Mukand again stated that it did not maintain size-specific costs. Id. at 2 (JA.2064). Although Mukand conceded that "{t}heoretically," there could be a cost difference, it claimed that the difference becomes "insignificant" as smaller sizes can be processed at higher speeds than larger sizes. Id.; and I&D Memo at 26 (JA.2114). Mukand, however, failed to provide any factual information to support its claim.

On January 21, 2011, in a final attempt to elicit the requested information from Mukand, Commerce issued a fourth supplemental questionnaire and again requested Mukand to support its claim that cost differences are insignificant. Mukand's Fourth Supplemental Section D QR Response (Feb. 10, 2011) at 1-5 (JA.2070-76). Commerce identified and elaborated on several flaws that it saw in Mukand's responses and requested information with respect to two factors, rolling

time and weight, that it believed would impact size-based costs. Id. Mukand was also instructed to contact Commerce if the request was unclear or if Mukand was unable to provide the requested information. Id. Mukand, however, never contacted Commerce and again refused to provide the requested information. Id. and I&D Memo at 27 (JA.2115).

On March 4, 2011, Commerce published its preliminary results. Prelim Results, 76 Fed. Reg. 12,044 (A1197-1207). In its preliminary results, Commerce concluded that Mukand "has not acted to the best of its ability in responding to the Department's request for size-specific cost information" because of its (1) repeated failure to provide product-specific costs data by size throughout the review; (2) failure to provide any meaningful explanation of why such data could not be provided; and (3) failure to provide factual information to support its claim that cost differences due to size were insignificant. Id. at 12,048 (A1201). Commerce, therefore, applied total adverse facts available ("AFA") and assigned Mukand an AFA rate of 22.63 percent, which represented the highest calculated weighted-average margin determined for any respondent in a prior segment of this proceeding. Id. at 12,053 (A1206).

On June 22, 2011, Mukand filed a case brief challenging Commerce's application of total adverse facts available. Final Results, 76 Fed. Reg. at 56,401 (JA.2125-28). In its case brief and in contrast to its prior claims, Mukand asserted

for the first time that it could now report production costs by size and requested that it be allowed to submit this new factual information in its case brief. <u>I&D Memo</u> at 31 (JA.2119). On June 29, 2011, petitioners (including Carpenter) filed a rebuttal brief supporting Commerce's preliminary results and urged Commerce to reject Mukand's request to submit new factual information. <u>Final Results</u>, 76 Fed. Reg. at 56,401-02 (JA.2125-26). On July 13, 2011, Commerce rejected Mukand's case brief and instructed Mukand to re-file its brief without the new size-specific cost information, which Mukand did on that same day. <u>Id.</u> After considering the record and all comments raised in the case and rebuttal briefs by the parties, Commerce issued the <u>Final Results</u> and accompanying Issues and Decision Memorandum. <u>Id.</u> and <u>I&D Memo</u> (JA.2125-28 and JA.2105-24).

In its final results, Commerce continued to rely on the use of adverse facts available in establishing the weighted-average dumping margin for Mukand. <u>Id.</u> Specifically, Commerce stated that the use of AFA was still appropriate "because of Mukand's: 1) repeated failure throughout this review to provide product-specific cost data by size; 2) failure to provide an acceptable explanation of why such data could not be provided; and 3) failure to provide requested factual information to support its claim that such cost differences due to size are insignificant." <u>I&D Memo</u> at 24 (JA.2112). Commerce found that Mukand "did not answer all of the Department's questions to the best of its ability" and that it

had "significantly impeded the Department's ability to properly conduct {the} investigation." Id. at 32 (JA.2120). As total AFA, Commerce assigned Mukand the dumping margin of 21.02 percent, which was the highest rate from the petition. Id. at 34 (JA.2122).

Mukand challenged Commerce's final results by commencing an action before the U.S. Court of International Trade ("CIT"). Following briefing by the parties, Judge Richard W. Goldberg issued a final judgment on March 25, 2013 affirming the final results in their entirety. See Mukand Ltd. v. United States, Ct. No. 11-00401, Slip Op. 13-41 (CIT 2013) (hereinafter "Mukand") (A100-14).

In reaching this decision, Judge Goldberg determined that Commerce adequately supported its total AFA determination and concluded that total AFA was warranted, given that "cost information is a vital part of {Commerce's} dumping analysis" and because "Commerce reasonably found that Mukand's missing information was essential for multiple calculations." Mukand, Slip Op. 13-41 at 15 (A114).

Mukand now requests that this Court overturn the CIT's decision.

## SUMMARY OF THE ARGUMENT

Contrary to Mukand's assertions, the administrative record makes clear that Mukand did not cooperate to the best of its ability to comply with Commerce's request for information. Despite numerous opportunities to do so, Mukand

repeatedly failed to provide product-specific costs by size or to provide an acceptable explanation as to why such data could not be provided. Instead, Mukand improperly assigned the same costs to all products irrespective of the final size of the bar product produced. Although Mukand claimed that cost differences for different sizes of bar were insignificant, it failed to provide factual information to support its claim despite multiple requests to do so. Because the product-specific cost information was essential for Commerce to make necessary cost adjustments that affect normal value, Mukand's failure to submit the requested information significantly impeded Commerce's review and prevented Commerce from calculating an accurate dumping margin. Accordingly, Commerce's application of adverse facts available to Mukand is supported by substantial evidence and in accordance with law.

Further, Commerce properly applied <u>total</u> adverse facts available against Mukand. Commerce determined that Mukand's failure to provide the requested product-specific costs by size rendered its entire response unusable for the final results. In addition, Commerce found that the information Mukand did provide was so incomplete that it could not serve as a reliable basis for reaching a final determination because without the cost information based on size, Commerce could not perform an accurate dumping analysis. Commerce further determined that because the information was so incomplete, it could not be used without undue

difficulty.    Accordingly, Commerce's application of <u>total</u> AFA in determining Mukand's dumping margin was supported by substantial evidence and in accordance with law.

**ARGUMENT**

## I.    <u>STANDARD OF REVIEW</u>

This Court must uphold any determination, finding, or conclusion by Commerce unless it is "unsupported by substantial evidence upon the record, or otherwise not in accordance with law." <u>See Corus Staal BV v. United States</u>, 395 F.3d 1343, 1346 (Fed. Cir. 2005); <u>Fujitsu Gen. Ltd. v. United States</u>, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)).    "Substantial evidence" means "'more than a mere scintilla'" and is considered "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Nippon Steel Corp. v. United States</u>, 337 F.3d 1373, 1379 (Fed. Cir. 2003) ("<u>Nippon Steel</u>") (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).    "'The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" <u>Id.</u> (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)).    Such detracting evidence includes "'contradictory evidence or evidence from which conflicting inferences could be drawn.'" <u>Id.</u> (quoting <u>Universal Camera Corp.</u>, 340 U.S. at 487).    Thus, the Court must decide whether "the administrative record contain{s} substantial evidence to

support'" Commerce's decision, and whether that decision was "rational." Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984).

An appellant, however, must do more than simply point to contradictory evidence in the record to overturn the agency's decision. "'{T}he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Id. (citations omitted). To the extent, therefore, that the evidence before the Department "could be open to multiple interpretations, its argument does not require, or even allow, reversal." Mitsubishi Heavy Indus., Ltd. v. United States, 275 F.3d 1056, 1062 (Fed. Cir. 2001) (citing Matsushita, 750 F.2d at 933).

In addition, given Commerce's special expertise in applying the antidumping law, this Court has repeatedly held that Commerce's "special expertise in administering the anti-dumping law entitles its decisions to deference from the courts." Nippon Steel, 337 F.3d at 1379 (citations omitted); see also Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994) ("Deference to an agency's statutory interpretation is at its peak in the case of a court's review of Commerce's interpretation of the antidumping laws.") (citing Daewoo Elecs. Co. v. United States, 6 F.3d 1511, 1516 (Fed. Cir. 1993)); Ad Hoc Shrimp Trade Action Comm. v. United States, 675 F. Supp. 2d 1287, 1304 (Ct. Int'l Trade 2009) (addressing Commerce's broad discretion in determining whether to apply AFA).

In addition, the Supreme Court has held that where the agency is applying the antidumping statute, "we ask only whether the Department's application was reasonable." United States v. Eurodif S.A., 555 U.S. 305, 319 (2009).

## II. COMMERCE'S APPLICATION OF TOTAL ADVERSE FACTS AVAILABLE IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS OTHERWISE IN ACCORDANCE WITH LAW

Mukand contends that Commerce's application of AFA was unlawful because it "fully answered all Commerce requests" and "so {it} acted to the best of its ability." Mukand's September 17, 2013 Principal Brief at 4 (hereinafter "Mukand Brief"). Mukand's claims are without merit. As set forth below, Mukand's arguments fail to establish that Commerce's decision to apply AFA in this case is unsupported by substantial evidence or not in accordance with law. Accordingly, Commerce's determination should be affirmed.

### A. Legal Standard

Section 776(a) of the Tariff Act of 1930, as amended, (the "Act") requires Commerce to resort to facts available if:

(1)   necessary information is not available on the record, or

(2)   an interested party or any other person –

   (A)   withholds information that has been requested by the administering authority . . .

   (B)   fails to provide such information by the deadlines for the submission of the information or in the form and manner requested, . . .

(C)     significantly impedes a proceeding under this title, or

(D)     provides such information but the information cannot be verified as provided in section 782(i) {19 U.S.C. § 1677m(i)}…

19 U.S.C. § 1677e(a).  Thus, the statute permits Commerce to use facts otherwise available if any one of the above criteria is met.  Notably, the Federal Circuit has stated that:

> The focus of subsection (a) is respondent's *failure to provide information*.  The reason for the failure is of no moment.  The mere failure of a respondent to furnish requested information – for any reason – requires Commerce to resort to other sources of information to complete the factual record on which it makes its determination.

Nippon Steel, 337 F.3d at 1381 (emphasis in original).  In addition, the Federal Circuit also indicated that inadequate responses to agency inquiries "may suffice" as a basis for finding that a respondent has failed to cooperate to the best of its ability.  Id. at 1383.

In cases where the Department resorts to the use of facts available, section 782(d) of the Act requires Commerce to first promptly notify the party of the nature of the deficiency and provide an opportunity for the party to remedy or explain the deficiency.  19 U.S.C. § 1677m(d).  Despite the existence of any deficiency, Commerce must consider the submitted information if it was (1) submitted by the established deadlines, (2) "can be verified," (3) "is not so

incomplete that it cannot" be used, (4) "if the interested party has demonstrate that it acted to the best of its ability" in submitting information as requested by Commerce, and (5) "can be used without undue difficulties." 19 U.S.C. § 1677m(e). If, however, a party's remedy or explanation for a deficiency is untimely or insufficient and does not satisfy all five requirements necessary for consideration, Commerce may "disregard all or part of the original and subsequent responses." 19 U.S.C. § 1677m(d).

Finally, section 776(b) of the Act further provides that an adverse inference may be used when a party "has failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b).

## B. Commerce Properly Found that Mukand Had Failed to Cooperate By Not Acting To the Best of Its Ability

### 1. Mukand Did Not Fully Answer All of Commerce's Requests

Mukand contends that it fully answered Commerce's specific questions regarding size-specific costs and so it acted to the best of its ability. Mukand Brief at 4. The record, however, clearly demonstrates that Mukand materially and repeatedly failed to comply with Commerce's requests for necessary information.

Throughout the proceeding, Mukand was asked by Commerce on no fewer than five separate occasions to provide product-specific cost data by size, or explain why such information cannot be provided. AFA Memo at 3, 12 (JA.2080, 2089) and I&D Memo at 24 (JA.2112). In each instance, however, Mukand failed

-14-

to submit the requested data.  Id.  Instead, Mukand improperly assigned the same amount of conversion costs per kilogram to all products irrespective of the final size of the bar product produced.  I&D Memo at 24-25 (JA.2112-13).  Recognizing that Mukand did not allocate costs to specific sizes in its normal books and records, Commerce repeatedly instructed Mukand to rely not only on its existing financial and cost accounting records, but on other information that would allow it to reasonably allocate its costs to the many different sizes of stainless bar products it produced.  Id. at 28-29 (JA.2116-17).  In addition, Commerce further instructed Mukand to "quantify and explain" its reasons for not reporting a cost difference if it believed that size did not contribute to cost differences between products.  Id. at 26 (JA.2114).  Mukand, however, failed to provide cost differences for size.  Id.  Instead, Mukand provided the following reasoning as to why it considered the cost differences to be insignificant:

> Theoretically based on size wise productivity, there can be a difference in production process.  But it becomes insignificant as smaller sizes can be processed at higher speed than to larger size.  Cross-section area of larger size is higher than smaller sizes but for a given process like drawing or smooth turning, higher sizes to be run at lower speed than smaller sizes.  Therefore difference in overall productivity of higher and lower sizes is not significant.  Therefore advantage of larger size require less processing time per kg is not there.

Id. at 26-27 (JA.2114-15) (citation omitted).

-15-

Commerce, however, found these general statements inadequate to support Mukand's contention that cost differences for different sizes are insignificant. Id. at 27 (JA.2115). Specifically, Commerce identified two specific factors – rolling time per meter of bar produced for various sizes and the weight per meter for various sizes – that impact the per-metric ton product specific cost of producing for the differences sizes of bar that Mukand reported. Mukand's Feb. 10, 2011 Fourth Supplemental Section D QR Response at 1 (JA.2071). Commerce determined that Mukand's current weight-based method of driving costs per metric ton was flawed, given that it did not account for rolling time differences or the weight per meter for various sizes. I&D Memo at 27 (JA.2115) and AFA Memo at 11 (JA.2088). Commerce noted that although Mukand claimed that the "difference in overall productivity of higher and lower sizes is not significant," this was unlikely given the large differences in the sizes of bar produced. I&D Memo at 27 (JA.2115) and AFA Memo at 10 (JA.2087). As a result, Commerce provided Mukand another opportunity to provide factual information to demonstrate the significance or insignificance of cost differences associated with different sizes of bar it produced. Id.

To assist Mukand in this regard, Commerce instructed Mukand to complete a table listing (1) the different sizes of bar produced for a selected grade of product; 2) the weight in kilograms per meter of bar for each different size of

product; 3) rolling time in seconds per meter for each different size of product; and 4) rolling time per kilogram of bar for each different size of product. <u>I&D Memo</u> at 27 (JA.2115). In addition, Commerce requested Mukand to separately report conversion costs for the rolling and final finishing stages of production. <u>Id.</u> at 28 (JA.2116). Notably, Commerce instructed Mukand to contact Commerce officials immediately if it could not approximate the weight in kilograms per meter or approximate the hot rolling time in seconds per meter of bar produced for each size. <u>Id.</u> Mukand, however, not only failed to provide the requested information, but neither Mukand nor its counsel contacted Commerce for assistance or clarification. <u>Id.</u> In addition, while Mukand acknowledged that there are cost differences between production of smaller and larger sizes of bar, it simply stated that its "management never felt necessity of going into details of size wise productivity" and that it was "unable to provide size specific cost." Mukand's Feb. 10, 2011 Fourth Supplemental Section D QR Response at 1 (JA.2071). As Commerce stated, "{c}ooperation in an antidumping investigation requires more than a simple statement that a respondent cannot provide certain information from its previously prepared accounting records." <u>I&D Memo</u> at 29 (JA.2117).

Under section 782(c) of the Act, a respondent has a responsibility to not only notify Commerce if it is unable to provide requested information, but also to provide a "full explanation and suggested alternative forms." 19 U.S.C. §

1677m(c)(1). In this case, in response to Commerce's repeated requests for product-specific costs by size, Mukand maintained its position that it would not provide the requested data because it claimed that cost differences related to size are insignificant and that its accounting system does not track such costs. See Mukand's Feb. 10, 2011 Fourth Supplemental Section D QR Response at 2-3 (JA.2072-73); and I&D Memo at 29 (JA.2117). As such, Commerce repeatedly asked Mukand to support its contention that size-specific cost differences for stainless bar are insignificant. Id. Mukand, however, failed to provide the Department with any actual data to support its claim. Id. Furthermore, Mukand failed to explain what steps it has taken to comply with the information request or to propose an alternative methodology for getting the necessary information.[1]

Thus, the record demonstrates that Mukand materially and repeatedly failed to comply with the Department's request for product-specific cost data by size. As the Department previously held, a respondent's "repeated submissions of incomplete and inaccurate data are no less a form of non-cooperation than failing to respond to the Department's questionnaire at all."[2] In addition, Mukand's contention after the issuance of the preliminary results that it was able to provide

---

[1] Allied-Signal Aerospace Co. v. United States, 996 F.2d 1185, 1192 (Fed. Cir. 1993) and I&D Memo at 29 (JA.2117).

[2] See Issues and Decision Memorandum for the Antidumping Duty Administrative Review on Stainless Steel Bar from India – February 1, 2002 through January 31, 2003 (Dep't Commerce Sept. 7, 2004) at Comment 1, referenced in 69 Fed. Reg. 55,409 (Dep't Commerce Sept. 14, 2004) (final results).

the product-specific costs by size demonstrates that Mukand had the ability to comply with the Department's request originally, but it chose to not comply. <u>I&D Memo</u> at 31-32 (JA.2119-20). Mukand was informed numerous times of the consequences of its failure to respond fully to Commerce's request for information. Mukand's repeated failures throughout the review to provide the product-specific costs by size or to provide any meaningful explanation of why such data could not be provided, demonstrates that Mukand did not cooperate to the best of its ability. Thus, as Commerce determined, "the combination of Mukand's failure to provide size-specific cost data, and the lack of an acceptable reason for such failure, warrants the use of facts otherwise available with an adverse inference." <u>AFA Memo</u> at 3 (JA.2080).

### 2. **Mukand's Contention That It Was Not Required To Submit the Requested Product-Specific Cost Data by Size Is Incongruous**

In further support of its claim that Commerce's application of adverse facts available was unlawful, Mukand asserts that Commerce only requested Mukand to report unit costs on a size-basis "if it could be done in a reasonable, verifiable way," and because it could not do so, it was not required to submit the requested data. Mukand Brief at 4-5. Mukand's claim is off the mark.

Commerce never stated or implied that Mukand could avoid submitting the requested cost data if it could not do so in a reasonable and verifiable way. <u>I&D</u>

Memo at 33 (JA.2121).  Rather, Commerce requested product-specific cost data by size in the original questionnaire and in each of its supplemental questionnaires concerning this issue and specifically instructed Mukand to rely not only on its existing financial and cost accounting records, but on other information which would allow it to reasonably allocate its costs by size.  Id. at 28-29 (JA.2116-17). In addition, Commerce stressed the importance of submitting the product-specific cost data by size in each of its supplemental questions.  For example, in its last supplemental questionnaire to Mukand, Commerce stated the following:

> We note that you have not provided size specific CONNUM costs in your cost database.  In previous supplemental questionnaires, the Department has asked that you provide cost differences between sizes of merchandise under consideration.  Please note again it is imperative that you submit a new Section D per-unit cost database by CONNUM that includes a unique cost for each CONNUM as defined by the physical characteristics listed by the Department's model match criteria at Appendix V of the antidumping duty questionnaire and at Sections B&C described in field numbers 3.1-3.6 (i.e., general type of finish, grade, remelting, type of operation, shape, and size).  CONNUMs should reflect cost differences for the physical characteristics identified by the Department.  Failure to provide the requested information may result in the Department deciding to rely on facts available, as required by section 776(a) of the Tariff Act of 1930, as amended, in our preliminary results.
>
> Based on your responses, it appears that you do not track cost differences for different sizes in your normal books and records.  However, it is not necessary for Mukand to calculate CONNUM specific costs in its normal books

and records in order to differentiate cost differences between CONNUMs that have different physical characteristics when reporting to the Department as long as the cost differences reported to the Department are based on reasonable and verifiable methods.

You have stated that Mukand's accounting records do not track cost for size, therefore you should use some reasonable method based on company records (e.g., engineering studies, rolling mill processing times etc) for allocating costs to products on a CONNUM specific basis representing costs associated with each size. You may rely on Mukand's production records and production experience to derive cost differences for size. Using the product specific cost from your normal books and records as a starting point, report CONNUM specific costs based on the size of the CONNUM using a reasonable method. Please describe the reasonable method used in calculating specific size costs in a narrative and provide source documents and worksheets that support you reported CONNUM specific cost calculations. Resubmit your cost database and include the per-unit cost differences for specific sizes within the reported CONNUMs.

Mukand's Feb. 10, 2011 Fourth Supplemental Section D QR Response at 5 (emphasis added) (JA.2075). Thus, Mukand's contention that it was not required to submit product-specific costs by size is incongruous as Commerce clearly instructed Mukand to submit product-specific costs in both the original and four supplemental questionnaires throughout the proceeding. I&D Memo at 24 (JA.2112). Despite Commerce's repeated requests, however, Mukand failed to provide the requested cost data by size and instead simply stated that it could not report size-specific costs within its normal accounting system. Id. at 28 (JA.2116).

## C.    Mukand Significantly Impeded The Proceeding

Mukand's repeated failure to respond to Commerce's numerous requests for information has significantly impeded Commerce's proceeding.   19 U.S.C. § 1677e(a)(2)(C).   Commerce provided Mukand multiple opportunities to submit product-specific costs by size and to provide factual information to demonstrate the significance or insignificance of cost differences associated with the different sizes of stainless bar it produced.  After five rounds of questionnaires on the cost issue and 300 days past the issuance of the initial section D questionnaire, Mukand did not submit the size-specific cost data requested by Commerce.  AFA Memo at 14 (JA.2091).  Thus, Commerce properly concluded that "{b}y deciding on its own what information it would and would not provide, Mukand impeded this review and failed to act to the best of its ability."  I&D Memo at 28 (JA.2116).

In this case, size is an important control number characteristic that has been used by Commerce in all prior cases involving stainless steel bar.  The size of the bar helps define the physical characteristics of the merchandise that have a significant impact on pricing and production costs.[3]   As Commerce noted, in this review, "product size must be accounted for in the cost of production ("COP") and the constructed value ("CV") because sales prices are compared to production

---

[3] See Issues and Decision Memorandum for the New Shipper Review of Stainless Steel Bar from India (Dep't Commerce Dec. 14, 2007) at Comment 2, referenced in 72 Fed. Reg. 72,671 (Dep't Commerce Dec. 21, 2007) (final results).

costs on a size-specific basis." I&D Memo at 24-26 (JA.2112-14). As a result, Commerce concluded that "without accurate data for size, we cannot perform a reliable sales-below-cost test; we cannot calculate accurate CVs for use as normal value; nor can we make accurate price-to-price comparisons of similar merchandise." AFA Memo at 3 (JA.2080). Given that product-specific cost data is necessary to calculate an accurate dumping margin, Mukand's continued failure to provide the critical information requested by Commerce rendered it impossible for Commerce to perform an accurate dumping calculation, thereby impeding the review. As such, Commerce properly determined that "Mukand's failure to provide the requested data renders its response unusable for these final results" and that application of AFA was appropriate. I&D Memo at 30 (JA.2118).

### D. Commerce's Decision Does Not Miss the Mark

Mukand also takes issue with certain findings in Commerce's AFA determination stating that they are unsupported by the record evidence. Mukand Brief at 7-10. Mukand's contentions, however, are again without merit.

First, Mukand argues that the fact that it has participated in prior dumping reviews or investigations is irrelevant because it did not report size-wise unit costs in the prior proceedings. Id. at 7-8. Commerce, however, determined that because Mukand participated in previous segments of this order, it "has experience in responding to the Department's requests for information and is well aware of the

types of information the Department requires." <u>I&D Memo</u> at 30 (JA.2118); <u>see</u> <u>also</u> <u>Stainless Steel Bar From India: Final Results of Antidumping Duty</u> <u>Administrative Review</u>, 63 Fed. Reg. 13,622 (Dep't Commerce Mar. 20, 1998); and <u>Nippon Steel</u>, 337 F.3d at 1382 (where CAFC reiterated that to conclude that a party has not cooperated to the best of its ability, Commerce need only show that a "reasonable and responsible importer would have known that the requested information was required to be kept and maintained under the applicable statutes, rules and regulations") (citing <u>Ta Chen Stainless Steel Pipe, Inc. v. United States</u>, 298 F.3d 1330, 1336 (Fed. Cir. 2002)). Thus, by participating in a prior proceeding, Mukand was aware of the types of information that was required to be submitted and the fact the Mukand may not have previously reported product-specific costs by size is simply irrelevant.

Second, Mukand argues that Commerce's claim that Mukand should have looked to its own experience to report size-wise costs is without support. Mukand Brief at 8. Contrary to Mukand's claim, Commerce repeatedly instructed Mukand to rely not only on its existing financial and cost accounting records, but on other information, such as engineering studies, rolling mill processing times, relative length to weight conversion factors, or other production records for allocating costs to products on a CONNUM-specific per-unit weight basis. <u>I&D Memo</u> at 30 (JA.2118).

Third, Mukand asserts that Commerce wrongly assumed that because two other respondents could report size-wise unit cost, Mukand could do so as well. Mukand Brief at 8-9. Specifically, Mukand claims that Commerce cited to no evidence that these other respondents reported size costs were done so in a reasonable and verifiable way. Id. at 9. As Commerce stated "{i}t is standard procedure for the Department to request product-specific cost data and we routinely receive such information from respondents, as we did from the other respondents, Facor and Venus, in this case." AFA Memo at 16 (JA.2093). Moreover, given that Facor produces its own liquid steel like Mukand, Commerce's reliance upon Facor's information, which Commerce noted was more relevant than Venus' information, was proper and supported by substantial evidence.

Lastly, Mukand claims that Commerce's finding that Mukand's offer to submit product-specific costs by size in its case brief did not mean that Mukand could report the data in the way Commerce requested (i.e., a reasonable and verifiable basis). Mukand Brief at 9. Instead, Mukand claims that it "was offering what Commerce had not requested." Id. Mukand's argument is unpersuasive. As Commerce stated, "{t}he fact that Mukand chose not to report these costs because it felt that the resulting calculations could not be 'reasonable' contradicts that evidence it has offered to provide as well as Factor's evidence on the record."

I&D Memo at 31-32 (JA.2119-20). In addition, Commerce stated that if Mukand was acting to the best of its ability, it "would have reported the requested product costs by size and allowed the Department and interested parties to analyze and assess the reasonableness of its methodology." Id. at 32 (JA.2120). Instead, Mukand made no attempt to submit the requested information and wrongly assumed that its methodology was unreasonable and unverifiable. Thus, Mukand clearly failed to act to the best of its ability because it failed to "do the maximum it is able to do." Nippon, 337 F.3d at 1382.

## III. COMMERCE'S APPLICATION OF TOTAL AFA IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS OTHERWISE IN ACCORDANCE WITH LAW

Mukand argues that Commerce exceeded it permissible discretion when it rejected all of Mukand's questionnaire responses and applied total AFA. Mukand Brief at 10. In support of its claim, Mukand argues that there were no other problems with the remainder of its questionnaire responses and that Commerce should have only applied partial adverse facts available to the missing information regarding cost differences by size. Id. at 10-11. Mukand's claims, however, are unpersuasive.

As found by Commerce, and as confirmed in the discussions above, the application of total AFA for Mukand is entirely appropriate under the statutory scheme, given that Mukand impeded the review and failed to act to the best of its

ability.  19 U.S.C. § 1677e(a), (b); I&D Memo at 28-30 (JA.2116-18).  In contrast

to Mukand's claims, this is not a case where the responses were deficient with

respect to only a discrete category of information, such that partial AFA would be

required.  See, e.g., Foshan Shunde Yongjian Housewares & Hardware Co. v.

United States, 35 CIT ___, ___, 2011 Ct. Intl. Trade LEXIS 123 at *39-40 (Oct.

12, 2011) and Washington Int'l Ins. Co. v. United States, 33 CIT ___, ___, 2009

Ct. Int'l Trade Lexis 93 at *31 n.18 (July 29, 2009) (noting Commerce's policy of

applying partial AFA "where there is useable information of record but the record

is incomplete.")

    Rather, as the Department made clear, resort to total AFA in this case is

entirely necessary.  Specifically, Commerce stated the following:

> Mukand's failure to provide the requested data renders its
> response unusable for these final results under section
> 782(e) of the Act.  The information Mukand did provide
> was so incomplete that it could not serve as a reliable
> basis for reaching a final determination because without
> the cost information based on size, the Department
> cannot conduct an adequate sales-below-cost test or
> calculate an accurate DIFMER adjustment for size.  For
> example, size specific sales prices are compared to size
> specific costs in the sales below cost test, so without size
> specific costs, an accurate sales-below-cost test cannot be
> performed.  Furthermore, because the information was so
> incomplete, we find it cannot be used without undue
> difficulty.  Therefore, in light of Mukand's continued
> failure to provide requested information necessary to
> calculate an accurate dumping margin in this case, or
> even factual data indicating that cost differences due to
> size are insignificant, in accordance with section 776(a)

of the Act, Mukand has failed to report information
requested by the Department and significantly impeded
this proceeding. Accordingly, we determine that the use
of facts otherwise available with an adverse inference is
appropriate to determine Mukand's margin.

I&D Memo at 30 (JA.2118). Moreover, Commerce has applied total AFA under

similar failures to provide product specific costs in other cases, including in a prior

segment involving this order.[4] [5] Thus, Commerce's application of total AFA to

Mukand was supported by substantial evidence and is in accordance with law.

---

[4] See, e.g., Notice of Final Determination of Sales at Less than Fair Value: Certain
Cold-Rolled Flat-Rolled Carbon-Quality Steel Products from Turkey, 65 Fed. Reg.
15,123 (Dep't Commerce Mar. 21, 2000) and accompanying Issues and Decision
Memorandum at Comment 1 (where Commerce applied total AFA because
respondent failed to provide product-specific costs in its original and supplemental
questionnaire response); Stainless Steel Bar from India: Final Results, Rescission
of Antidumping Duty Administrative Review in Part, and Determination To
Revoke in Part, 69 Fed. Reg. 55,409 (Dep't Commerce Sept. 14, 2004) and
accompanying Issues and Decision Memorandum at Comment 1 (where
Commerce applied total AFA because Chandan's responses were so deficient they
were unusable. Similar to this case, Chandan did not allocate rolling mill costs
(i.e., differentiate costs between products based on dimensions) after Commerce's
repeated and specific requests); see also Certain Kitchen Appliance Shelving and
Racks From the People's Republic of China: Final Determination of Sales at Less
Than Fair Value, 76 Fed. Reg. 36,656 (Dep't Commerce July 24, 2009) and
accompanying Issues and Decision Memorandum (Dep't Commerce July 20,
2009) at Comment 16A (applying total AFA because respondent failed to report
product-specific cost data, which affected a significant portion of respondent's
normal value); and Floor-Standing, Metal-Top Ironing Tables and Certain Parts
Thereof From the People's Republic of China: Final Results of Antidumping Duty
Administrative Review, 75 Fed. Reg. 3201 (Dep't Commerce Jan. 20, 2010) and
accompanying Issues and Decision Memorandum (Dep't Commerce Jan. 6, 2010)
at Comment 2 (applying total AFA based upon inconsistencies and contradictions
in respondents' data and the respondent's failure to provide product-specific costs).

[5] While Mukand cites to Certain Woven Electric Blankets from the People's
Republic of China in support of its argument that partial AFA should be applied to
Mukand in this case, that case is distinguishable from the instant case. See Certain
Woven Electric Blankets from the People's Republic of China: Issues and Decision
Memorandum for the Final Determination (Dep't Commerce June 25, 2010) at
Comment 1, referenced in 75 Fed. Reg. 38,459 (Dep't Commerce July 2, 2010)
(final determination). Specifically, unlike the instant case, Commerce determined

## IV.   **CONCLUSION**

For the foregoing reasons, the Plaintiff-Appellant's challenges to Commerce's Final Results should be rejected, and this Court should affirm the decision by the U.S. Court of International Trade that sustains the agency determination in its entirety.

Respectfully submitted,

*Grace W. Kim*

LAURENCE J. LASOFF
GRACE W. KIM
MARY T. STALEY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
202-342-8400

Counsel to Defendant-Appellee Carpenter Technology Corporation

December 16, 2013

---

that partial AFA was appropriate in that case because "a significant portion of {respondent's} FOPs and U.S. sales data have been verified and can be relied upon to calculate a dumping margin." Id. at Comment 1.

## CERTIFICATE OF SERVICE

### Mukand, Ltd. v. United States
### CAFC Court No. 2013-1425

I hereby certify that on December 16, 2013, Defendant-Appellee Carpenter Technology Corporation's Brief was served upon all parties by operation of the Court's electronic filing system.

_Grace W. Kim_

GRACE W. KIM
gkim@kelleydrye.com
KELLEY DRYE & WARREN LLP.
3050 K Street NW, Suite 400
Washington DC, 20007
(202) 342-8400